

# THE ATTORNEY GENERAL
# OF TEXAS

Gerald C. Mann

AUSTIN 11, TEXAS

~~XXXXXXXXXXXXXXXXXX~~

ATTORNEY GENERAL

Hon. O. P. Lockhart
Chairman
Board of Insurance
Commissioners
Austin, Texas

Opinion No. O-4054
Re: Eligibility of bonds of the
United States for investment and
deposit by insurance companies.

Dear Sir:

Your request for an opinion of this department reads:

"We understand that United States Defense
Bonds, Series F and G, provide in their face as
to both classes that they shall be 'non-transfer-
able'; Series F providing that they may be cashed
by the holder after 90 days from purchase date,
and Series G providing that they may be cashed by
the holder after one year from purchase date.

"Please give us your opinion upon the question
whether such bonds of either or both series may law-
fully be approved by the Board of Insurance Commis-
sioners as securities in the following circumstances.

"As capital stock deposits of old line legal
reserve life, health, and accident companies under
the provisions of Article 4739.

"As reserve deposits of such companies under
Article 4740, 4725, and other pertinent statutory
provisions.

"As 'Securities of the United States' under
the provisions of Article 4759.

"As reserve securities for the four types of
companies or associations affected by, and required
to accumulate and maintain reserve of securities by
the terms of, S.B. 135, (Acts, 1939, 46th Leg.,
Page 401, Article 5068-1, Sections 1-31) as amended
by H.B. 1065, effective June 2, 1941, and as amended
by S.B. 93, (Acts, 1941) effective October 3, 1941."

The question before us is whether or not the particu-
lar type of United States bonds described in paragraph one of
your inquiry, by reason of the limitations contained therein,
are eligible for investment and deposit under the hereinafter

discussed statutes. For convenience we will dispose of the questions before us by discussing the statutes in the order appearing in your inquiry.

Article 4739, Revised Civil Statutes, reads:

"Any life insurance company, accident insurance company, life and accident, health and accident, or life, health and accident insurance company, organized under the laws of this State, may at its option, deposit with the State Treasurer securities equal to the amount of its capital stock, and may, at its option, withdraw the same or any part thereof, first having deposited in the treasury in lieu thereof other securities equal in value to those withdrawn. Any such securities, before being so originally deposited or substituted, shall be approved by the Commissioner. When any such deposit is made, the Treasurer shall execute to the company making the deposit a receipt therefor, giving such description to such securities as will identify the same; and such company shall have the right to advertise such fact, or print a copy of the treasurer's receipt on the policies it may issue; and the proper officer or agents of each insurance company making such deposit shall be permitted, at all reasonable times, to examine such securities and to detach coupons therefrom and to collect interest thereon, under such reasonable rules and regulations as may be prescribed by the Treasurer, and the Commissioner. Such deposit when made by any company shall thereafter be maintained as long as said company shall have outstanding any liability to its policy holders. For the purpose of State, county, and municipal taxation, the situs of all personal property belonging to such companies shall be at the home office of such company."

It is apparent that it was the legislative intention in the passage of such law that those companies desiring to avail themselves of the advantages afforded thereby should keep such deposit with the State Treasurer until all obligations of the company had been discharged to its policy holders. No provision is made, however, for subjecting the deposit, or any part thereof, to the payment of the company's indebtedness. In the absence of a statute permitting the garnishment of such funds we do not believe the same could be subjected to the payment of debts until and unless the company having such deposits was

placed in liquidation. There appears no necessity that the bonds deposited thereunder be readily convertible into cash. We cannot say as a matter of law that such bonds cannot be used for the purposes of the statute. We desire to point out, however, that the Insurance Commissioner is given the power and authority to approve the securities to be deposited. You fould in the exercise of the discretion granted refuse to accept such bonds if you determined that three months, twelve months or any other period of time before such bonds are subject to being cashed, would render the account insufficiently liquid to adequately protect the policyholders for whose benefit the deposit is being made.

We do not believe that the "non-transferable" provision of the bonds have any effect on the question here for the reason that creditors could not get possession of the bonds for the purpose of liquidating their indebtedness but must look only to the liquidated value thereon.

Article 4740, Revised Civil Statutes, reads:

"Any life insurance company now or which may hereafter be incorporated under the laws of this State may deposit with the Commissioner for the common benefit of all the holders of its policies and annuity bonds, securities of the kinds in which, by the laws of this State, it is permitted to invest or loan its funds, equal to the legal reserve on all its outstanding policies in force, which securities shall be held by said Commissioner in trust for the purpose and objects herein specified. Any such company may deposit lawful money of the United States in lieu of the securities above referred to, or any portion thereof, and may also, for the purposes cf such deposit, convey to said Commissioner in trust the real estate in which any portion of its said reserve may be lawfully invested. In such case, said Commissioner shall hold the title thereto in trust until other securities in lieu thereof shall be deposited with him, whereupon he shall reconvey the same to such company. Said Commissioner may cause any such securities or real estate to be appraised and valued prior to their being deposited with, or conveyed to, him in trust as aforesaid, the reasonable expense of suce appraisement or valuation to be paid by the company."

It is our opinion that the bonds in question may be deposited hereunder within the discretion of the Life Insurance

Commissioner for the reasons appearing hereinabove in the discussion of Article 4739, supra.

Article 4725, Revised Civil Statutes, consists of four paragraphs, too lengthy to here set out. It specifically provides the kinds and character of securities and the manner in which Texas life insurance companies may invest their funds. It provides that they may invest their funds in "the bonds of the United States." No restrictions are placed upon such provision as to the character of bonds.

It is our opinion that investments may be made in such bonds under this statute subject to the right of Insurance Commissioner to limit the amount thereof to the extent necessary to assure the ability of the companies to pay off their obligations as they mature.

Article 4759, Revised Civil Statutes, reads:

"No foreign life insurance company or accident insurance company, or life and accident, health and accident, or life, health and accident insurance company, incorporated by or organized under the laws of any foreign government, shall transact business in this State, unless it shall first deposit and keep deposited with the Treasurer of this State, for the benefit of the policy holders of such company, citizens or residents of the United States, bonds or securities of the United States or the State of Texas to the amount of one hundred thousand dollars."

Article 4760, Revised Civil Statutes, provides:

"The deposit required by the preceding article shall be held liable to pay the judgments of policy holders in such company, and may be so decreed by the court adjudicating the same."

It appears from the two preceding articles that it was the legislative intent that the companies embraced therein should at all times have on deposit with the State Treasurer assets readily convertible into cash, which the court rendering judgment against such depositing company might decree subject to the payment thereof. We do not believe that the bonds in question, by reason of their non-transferable and withdrawal maturity features are sufficiently liquid within such reasonable time for the payment of judgments as was anticipated by the Legislature. We hold that the bonds in question cannot be deposited under this statute.

Senate Bill 135, Acts of the Forty-sixth Legislature, codified as Article 5068-1, and since amended with certain respects with which we are not here concerned, is a comprehensive regulatory bill embracing the whole field of mutual insurance. Section 12 thereof provides for the creation of at least two separate funds, one of which being the mortuary or relief fund, and the other the expense fund. At least sixty per cent of the assessments or premiums received is required to be deposited in the mortuary fund and held as a reserve to be used for the payment of claims. It is further provided that the mortuary fund may be invested only in such securities as are a legal investment for the reserve funds of a stock life insurance company.

Section 13 of the Article provides in part:

"It is the primary purpose of this Act to secure to the members of the associations and their beneficiaries the full and prompt payment of all claims according to the maximum benefit provided in their certificates. It is therefore required of all associations that all claims under certificates be paid in full within sixty (60) days after receipt of due proof of claims."

Having already held herein that stock life insurance companies may invest their funds in the bonds in question with certain limitations, it is our opinion that the companies subject to regulation by Senate Bill 135 may do likewise. This right, of course, is limited by the above quoted Section 13 and the Commissioner can require liquid assets to the extent necessary to carry out the legislative mandate to pay the claims promptly.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ Lloyd Armstrong
Lloyd Armstrong, Assistant

APPROVED OCT 30, 1941
/s/ Grover Sellers
FIRST ASSISTANT
ATTORNEY GENERAL

APPROVED: OPINION COMMITTEE
BY:     BWB, CHAIRMAN

LA:LM:wb